IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MARTINIQUE PROPERTIES, LLC,

Plaintiff,

vs.

CERTAIN UNDERWRITERS AT LLOYD'S
LONDON SUBSCRIBING TO POLICY
NUMBER W1551E160301,  BEAZLEY
LLOYD'S SYNDICATE 2623, and  BEAZLEY
LLOYD'S SYNDICATE 623,

Defendants.

**8:21-CV-209**

**MEMORANDUM AND ORDER**

## I.      INTRODUCTION

Martinique Properties, LLC ("Martinique") sued Certain Underwriters at Lloyd's, London Subscribing to Policy Number W1551E160301, Beazley Lloyd's Syndicate 2623, and Beazley Lloyd's Syndicate 623 (hereinafter collectively referred to as "Defendants") seeking declaratory judgment and damages for breach of contract. Filing 1 at 28-29. Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. Filing 9. For the reasons stated herein, the Court grants Defendants' motion.

## II.      BACKGROUND

Martinique is the owner of the Martinique Apartments in Omaha, Nebraska. Filing 1 at 13. Defendants, who are foreign entities with their principal place of business in the United Kingdom,

1

subscribed to Martinique's insurance policy, No. W1551E160301, which provides coverage for damages to the Martinique Apartments. Filing 1 at 13-14, 48-49, 131-32.[1] The policy also includes a provision providing for an "Appraisal" when a disagreement arises over the value of the property or the amount of the loss. Filing 1 at 61. Under the appraisal provision, either party can make a written demand for an appraisal. Filing 1 at 61. Thereafter, each party selects an appraiser. Filing 1 at 61. In turn, these two appraisers select an "umpire." Filing 1 at 61. An agreement on the value of the property or the amount of the loss between two of the three individuals is binding on both parties. Filing 1 at 61. The provision also states that, even if there is an appraisal, Defendants "retain [the] right to deny the claim." Filing 1 at 61.

On May 10, 2016, the Martinique Apartments sustained hail and wind damage, which Martinique's insurance policy covered. Filing 1 at 14. After Martinique made a claim under its insurance policy, a dispute arose between Martinique and Defendants as to the amount owed under the insurance policy. Filing 1 at 15. Due to this disagreement, on September 17, 2019, Martinique demanded an appraisal pursuant to the appraisal provision in the insurance policy. Filing 1 at 15. Martinique appointed Ryan Kinneberg as its appraiser, Defendants appointed Randy Ison, and both Kinneberg and Ison appointed Nicholas Pontillo as umpire. Filing 1 at 15.

On or about June 8, 2020, Pontillo and Ison agreed to an appraisal award. Filing 1 at 15. Pontillo sent Ison and Kinneberg a June 8, 2020, letter recognizing the award.[2] Filing 1 at 119-20. The letter stated, "We are in agreement that the cost to repair hail damage to the Martinique

---

[1] Although Martinique did not file the policy with its complaint, it did file it in opposition to the present motion. Because this document is "necessarily embraced by the complaint," the Court may consider it without converting Defendants' Motion to Dismiss into a summary judgment motion. *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012); *see also Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003) ([T]he contracts upon which [a] claim rests . . . are evidently embraced by the pleadings.").

[2] Both parties filed this letter in conjunction with the present motion, but Martinique did not file a copy of this letter with its complaint. However, the complaint directly quotes the letter. Filing 1 at 15. Therefore, the letter is "necessarily embraced by the complaint," and the Court may consider the parties' filed versions without converting Defendants' Motion to Dismiss into a summary judgment motion. *See Ashanti*, 666 F.3d at 1151.

2

Properties buildings in Omaha, Nebraska is $1,688,367.01 (RCV) in addition to $374,258.35 in code-associated costs." Filing 1 at 119. The bottom of the letter included signature blocks for Pontillo, Kinneberg, and Ison. Filing 1 at 119-20. Martinique claims that when it received the letter, Pontillo was the only person who had signed it. Filing 22 at 5; Filing 23-4 at 1-2. The version of the letter Defendants filed with this Court in their notice of removal has both Pontillo's and Ison's signatures, but the letter filed by Martinique with its brief in opposition to Defendants' motion to dismiss contains only Pontillo's signature. Filing 1 at 119-20; Filing 23-4 at 1-2. The parties appear to agree that Kinneberg refused to approve the award or sign the letter. Filing 1 at 16. On June 20, 2020, Defendants sent Martinique a Statement of Loss purportedly pursuant to the appraisal award. Filing 1 at 4. Later, Martinique demanded that Defendants provide reimbursement for repairs in the amount of $1,475,000.00. Filing 1 at 17. According to Martinique, Defendants have paid $1,007,260.16, but refuse to pay any additional money. Filing 1 at 17.

On May 5, 2021, Martinique sued Defendants in Nebraska state court. Filing 1 at 13. Martinique's Complaint sought declaratory judgment finding that the appraisal award is invalid and damages for breach of contract. Filing 1 at 18-19. Defendants removed the action to this Court on June 4, 2021. Filing 1. On June 11, 2021, Defendants moved to dismiss Martinique's complaint for failure to state a claim and for failing to timely challenge the appraisal award. Filing 9.

### III.    ANALYSIS

### A.  Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678). "When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cnty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)).

### B. Applicable Law

Both of Defendants' arguments for dismissal rely upon the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applying in this case. According to Defendants, whenever a written agreement to arbitrate commercial matters is made between two parties, one of which is not a United States citizen, the arbitration is enforced through the Convention on the Recognition and Enforcement of Arbitral Awards. Filing 12 at 10-12. *See* Convention on the Recognition and Enforcement of Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997; *see also Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999); 9 U.S.C. § 203. The Convention is a "multilateral treaty that addresses international

4

arbitration." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC,* 140 S. Ct. 1637, 1644 (2020) (citing 21 U.S.T. 2517, T.I.A.S. No. 6997). It requires signatories, such as the United States, to recognize and enforce arbitral awards of other signatories. 21 U.S.T. 2517, T.I.A.S. No. 6997 at Art. III. Chapter 2 of the FAA implements the Convention in the United States. *See* 9 U.S.C. §§ 201-08. Federal courts have jurisdiction over actions governed by the Convention. *See id.* at § 203. The FAA also contains a residual clause providing that Chapter 1 of the FAA applies to actions brought under the Convention if there is no conflict with the Convention or its implementing legislation. *See id.* at § 208.

The Defendants contend that the Convention, and thus the FAA through the residual clause in § 208, governs because the appraisal agreement in this case provides for arbitration of a commercial matter, and at least one party is not a citizen of the United States. Filing 12 at 10-12. An arbitration falls under the convention if (1) there is a written agreement to arbitrate, (2) the arbitration takes place in a signatory to the Convention, (3) the arbitration arises out of "a commercial relationship," and (4) one party to the agreement is not a United States Citizen. *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (listing elements); *see also* 9 U.S.C. § 202. The Court agrees with Defendants that the appraisal arose out of a commercial relationship and that Defendants are not citizens of the United States. However, more analysis is required as to whether the appraisal proceeding in this case constituted arbitration under the FAA, such that the appraisal clause in the insurance policy constitutes a written agreement to arbitrate.

The law in the Eighth Circuit is unsettled on the issue of whether an appraisal constitutes arbitration under the FAA. If an appraisal in this instance does not constitute arbitration, the Convention and the FAA do not apply. The Court concludes federal common law should be used

to interpret the word "arbitration," the appraisal process in this case constitutes "arbitration," and the FAA and the Convention therefore apply.

## 1. Federal Common Law Governs the Meaning of "Arbitration" in the FAA

The FAA applies to "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2. However, the law does not define what constitutes an arbitration. Further, the United States Courts of Appeals are split on whether to use state law or federal common law to define this term. *Compare Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1061-63 (5th Cir. 1990) (state law), *and Wasyl, Inc., v. First Boston Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987) (state law), *with Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135*, 707 F.3d 140, 143 (2d Cir. 2013) (federal law), *Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 693 (6th Cir. 2012) (federal law), *Salt Lake Tribune Publ. Co. v. Mgmt. Planning, Inc.*, 390 F.3d 684, 689 (10th Cir. 2004) (federal law), *and Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 6–7 (1st Cir. 2004) (federal law). The Eighth Circuit has not yet ruled on whether state law or federal common law governs the definition of "arbitration."[3]

The Courts using state law make two arguments. First, the "state-law courts" reason that "since state law is only preempted to the extent necessary to protect the achievement of the aims

---

[3] It is true that the Eighth Circuit in *Recold, S.A. de C.V. v. Monfort of Colorado, Inc.*, stated in a footnote, "In addressing the issue of whether a party has entered into an agreement to arbitrate under the Arbitration Act, courts are to apply general state law principles, giving due regard to the federal policy favoring arbitration." 893 F.2d 195, 198 n.6 (8th Cir. 1990) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989)). However, *Recold's* analysis used state law to determine whether an arbitration clause in a contract between a manufacturer and a distributer could bind a "remote purchaser statutory beneficiary of a warranty" to arbitrate disputes. *Id.* at 197-98. It did not analyze the issue of whether state law or federal common law should govern what constitutes an arbitration. *See Fit Tech*, 374 F.3d at 6 ("[T]he *substance* of the purchase agreement—who promised to do what— is governed by state law . . . , but whether what has been agreed to amounts to 'arbitration' under the Federal Arbitration Act depends on what Congress meant by the term in the federal statute." (emphasis in original)).

of the FAA, in circumstances such as these a court should be able to look to state law provided it is not inconsistent with the goals of the FAA." *Teachworth*, 898 F.2d at 1062 (citing *Wasyl*, 813 F.2d at 1582). To support their proposition, the state-law courts refer to the Supreme Court case *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468 (1989). In *Volt*, the Supreme Court noted that the FAA "contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Id.* at 478. Accordingly, the Supreme Court held that state law would be preempted by the FAA only to the extent it conflicted with the FAA. *Id.* Thus, the state-law courts assert that it is appropriate to use state law to define "arbitration" so long as it does not conflict with the FAA.

Second, the state-law courts assert that applying state law will not frustrate the FAA's purpose "to ensure the judicial enforcement of privately made agreements to arbitrate." *Teachworth*, 898 F.2d at 1063. In particular, the Fifth Circuit in *Teachworth* applied Texas law to keep the FAA from stretching beyond its intended scope. *Id.*

In contrast, the "federal-law courts" assert that the meaning of "arbitration" in the FAA "depends on what Congress meant by the term in the federal statute." *Fit Tech*, 374 F.3d at 6. Citing Supreme Court precedent, these courts first recognize that "absent 'a plain indication to the contrary' [courts] presume that 'the application of the federal act [is not] dependent on state law'. . . . [u]nless 'uniform nationwide application . . . clearly was not intended.'" *Bakoss*, 707 F.3d at 143 (quoting *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43 (1989)). The federal-law courts emphasize that Congress intended "to create a uniform national arbitration policy." *Id.* Thus, "[i]n the absence of clear evidence that Congress intended state law to define 'arbitration,' [courts] must assume that federal law provides the definition." *Salt Lake Trib.*, 390 F.3d at 688. Because there is no clear evidence that Congress intended state law to define "arbitration," these

courts resort to federal common law. *Id.* at 144. Using state law, these courts assert, "would empower states to define arbitration as they choose, thus limiting the FAA's utility," *Salt Lake Trib.*, 390 F.3d at 688, and would create "a patchwork in which the FAA will mean one thing in one state and something else in another." *Bakoss*, 707 F.3d at 144 (quoting *Portland Gen. Elec. Co. v. U.S. Bank Tr. Nat. Ass'n as Tr. for Tr. No. 1*, 218 F.3d 1085, 1091 (9th Cir. 2000) (Tashima, J., concurring)).

This Court finds the reasoning of the federal-law courts persuasive. It would be "counter-intuitive to look to state law to define a term in a federal statute on a subject as to which Congress has declared the need for national uniformity." *Evanston Ins.*, 683 F.3d at 693 (quoting *Portland Gen. Elec.*, 218 F.3d at 1091 (Tashima, J., concurring)). Courts holding otherwise have found that the FAA's definition of arbitration constantly shifts depending on the nature of the "arbitration" and the state law being applied. *Compare Wasyl*, 813 F.2d at 1582 (finding that, under California law, an appraisal is arbitration), *with Portland Gen Elec.*, 218 F.3d at 1089-90 (finding that, under Oregon law, an appraisal is *not* arbitration). Indeed, the Supreme Court has recognized that allowing state law to define terms in federal statutes risks impairing federal programs. *See, e.g.*, *Holyfield*, 490 U.S. at 44 ("A . . . reason for the presumption against the application of state law is the danger that 'the federal program would be impaired if state law were to control.'" (quoting *Jerome v. United States*, 318 U.S. 101, 104 (1943))). Therefore, in accordance with the FAA's intent to create a uniform national arbitration policy, this Court will apply federal common law to determine the meaning of "arbitration."

2. *The Appraisal Constitutes Arbitration*

Having determined that federal common law defines the meaning of "arbitration" in the FAA, the Court turns to whether the appraisal process at issue in this case constitutes "arbitration." The Court concludes it does.

The Eighth Circuit has not yet provided a test to determine whether a dispute-resolution process constitutes an "arbitration" under the FAA. Each circuit that has provided a test has declined to propose a bright-line rule. For example, the First and Tenth Circuits ask how much a dispute-resolution process "resembles classic arbitration." *Fit Tech*, 374 F.3d at 7; *Salt Lake Trib.*, 390 F.3d at 689. The Eleventh Circuit looks for "common incidents" of "classic arbitration," which include "(i) an independent adjudicator, (ii) who applies substantive legal standards . . . (iii) considers evidence and argument . . . from each party, and (iv) renders a decision that purports to resolve the rights and duties of the parties, typically by awarding damages or equitable relief." *Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1239 (11th Cir. 2008). For its part, the Second Circuit holds, "A contractual provision that 'clearly manifests an intention by the parties to submit certain disputes to a specified third party for binding resolution' is arbitration within the meaning of the FAA." *Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146, 151 (2d Cir. 2019) (citing *McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988)). Although formulated slightly differently, each of these tests centers around the FAA's primary purpose "to ensure that agreements to arbitrate are enforced according to their terms and that parties are free to structure their arbitration agreements as they wish." *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 505 (8th Cir. 1999); *see also see Advanced Bodycare*, 524 F.3d at 1239 (noting these various tests are not in conflict). Thus, this Court agrees

with the First, Tenth, and Eleventh Circuits that the crux of the question in this case is whether the appraisal process used by both parties resembles classic arbitration.

Looking at the appraisal provision in the insurance policy, the Court concludes that it constitutes "arbitration" under the FAA. Although it uses the term "appraisal" rather than "arbitration," "the term 'arbitrate' need not appear in the contract in order to invoke the benefits of the FAA." *Milligan*, 920 F.3d at 151. The provision provides for an independent third party, here the umpire selected by each appraiser, to decide the value of the property or the scope of the loss. Filing 1 at 61. The process is solely focused on resolving the dispute between the two parties. Additionally, if one of the appraisers agrees with the umpire, the appraisal is binding on both parties. Filing 1 at 61. Finally, based on Martinique's complaint, it appears that both parties were able to submit evidence, such as estimates, to the umpire. Filing 1 at 16-17. As a binding decision, rendered by a third party, that resolves the dispute in a process where both sides submitted evidence, the appraisal process has the hallmarks of classic arbitration. *See, e.g.*, *Milligan*, 920 F.3d at 152 (holding that appraisal was arbitration where contractual provision identified the dispute, submitted the dispute to third parties, and made the decision by the third parties binding); *McDonald's Corp. v. Vanderbilt Atl. Holdings LLC*, No. 19CV06471DLIST, 2020 WL 6481408, at *3 (E.D.N.Y. Sept. 30, 2020), *aff'd*, 851 F. App'x 259 (2d Cir. 2021) (finding that appraisal was arbitration where parties agreed to submit dispute of property's value to appraisers for a binding decision); *Liberty Mut. Grp., Inc. v. Wright*, No. CIV.A. DKC 12-0282, 2012 WL 718857, at *6 (D. Md. Mar. 5, 2012) (finding that appraisal was arbitration where submission of the dispute to the appraisers selected by the parties, with potential involvement by an umpire, would resolve the issue of the amount of loss).

This case is distinguishable from those in which courts found an appraisal did not constitute an arbitration. *See, e.g.*, *Salt Lake Trib.*, 390 F.3d at 689-90 (holding that an appraisal procedure did not constitute an arbitration because it did not "empower[] a third party to render a decision settling [the parties'] dispute"); *Portland Gen. Elec.*, 218 F.3d 1085, 1089 (9th Cir. 2000) (determining, under state law, that appraisal was not arbitration); *Teachworth*, 898 F.2d at 1061-62 (same). There is, however, one case that deserves further examination. In *Evanston Insurance Co. v. Cogswell Properties, LLC*, 683 F.3d 684 (6th Cir. 2012), the Sixth Circuit considered an appraisal provision similar to the one in this case and determined that the appraisal was not an arbitration under the FAA. *Evanston Ins. Co.*, 683 F.3d at 686, 693-94. The court considered it decisive that, even if there was an appraisal, the plaintiff insurance company retained the right to deny the claim. *Id.* at 693. According to the court, this provision meant that the appraisal was not binding. *Id.*; *see also 491 Units Miami Garden Inv. LLC v. Lexington Ins. Co.*, No. 20-CV-20820-UU, 2020 WL 6135803, at *1–2 (S.D. Fla. Apr. 1, 2020) (finding that an appraisal provision providing that the insurance company retained the right to deny the claim was not arbitration).

In contrast with the *Evanston* court, the Second Circuit in *Milligan v. CCC Information Services Inc.*, 920 F.3d 146 (2d Cir. 2019), enforced an appraisal provision with a similar reservation-of-rights clause. The clause stated, "We will not waive our rights by any of our acts relating to appraisal." *Milligan*, 920 F.3d at 149. Nevertheless, the *Milligan* court determined that the appraisal process in its case "constitute[d] arbitration for the purposes of the FAA" because, among other reasons, it made "resolution by [the appraisers] of the dispute binding." *Id.* at 152.

The Court finds the *Milligan* court's conclusion more persuasive than that of the *Evanston* court. First, the *Evanston* court's analysis on this issue was dicta because it was unnecessary to the resolution of the case; the *Evanston* court had determined that the argument applying the FAA had

been forfeited. *Evanston Ins. Co.*, 683 F.3d at 691-92. Moreover, the Court believes that an insurance company's retention of its right to deny the claim does not affect the binding nature of the appraisal award.[4] A dispute over the value of property or amount of loss is distinct from a dispute over whether the insurance policy covers the damage in the first place. Allowing one party the right to dispute one issue does not necessarily make the resolution of another issue nonbinding. Other courts analyzing the same reservation-of-rights clause in the context of the FAA have also concluded that an appraisal award is binding on the parties, notwithstanding the insurer's ability to deny the claim afterwards. *See Tae Hyung Lim v. Am. Econ. Ins. Co.*, No. 13-CV-02063-CMA-KLM, 2014 WL 1464400, at *3 (D. Colo. Apr. 14, 2014) ("The Court interprets this clause to allow Defendant to deny the claim for reasons not related to the amount of the appraisal . . . . It does not allow Defendant to ignore the loss calculation reached through the appraisal process."); *State Auto. Mut. Ins. Co. v. Rod & Reel, Inc.*, No. CV PWG-18-340, 2018 WL 5830734, at *5 (D. Md. Nov. 7, 2018), *aff'd*, 774 F. App'x 168 (4th Cir. 2019) (finding that "the FAA applies" when appraisal provision contained a reservation-of-rights clause); *see also CenTrust Bank, N.A. v. Montpelier U.S. Ins. Co.*, No. 12-CV-9233, 2013 WL 1855838, at *2 (N.D. Ill. May 1, 2013) ("Given that an appraisal clause is limited to issues of valuation, where the clause provides that the insurance company 'will still retain [its] right to deny the claim,' this Court interprets such language to mean that the insurer may still object to liability, but cannot object to the amount assessed by the appraisal process."). Numerous cases analyzing the same reservation-of-rights clause under state law have reached the same conclusion. *See, e.g.*, *Childs v. State Farm Fire & Cas. Co.*, 899 F. Supp. 613, 615–16 (S.D. Fla. 1995), *aff'd sub nom. Childs v. State Farm*, 158

---

[4] Even if the reservation-of-rights clause did make the appraisal nonbinding, the Eighth Circuit has indicated that "the FAA applies to at least some agreements to engage in mandatory, non-binding arbitration." *Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 747 (8th Cir. 2003).

F.3d 588 (11th Cir. 1998) (under Florida law, rejecting argument that the reservation-of-rights clause made an appraisal provision unenforceable); *Green Project, Inc. v. Evanston Ins. Co.*, No. CV 07-7744, 2008 WL 11355074, at *4 (E.D. La. Oct. 8, 2008) ("[The insurer's] reservation of its right to ultimately deny the claim does not change the binding nature of the appraisal."); *J. Wise Smith & Assocs., Inc. v. Nationwide Mut. Ins. Co.*, 925 F. Supp. 528, 530 n.3 (W.D. Tenn. 1995) ("Defendant's reservation of the right to deny the claim does not affect the validity of the appraisal provision.").

In concluding that an appraisal constitutes arbitration under the FAA, the *Milligan* court held,

> The appraisal provision identifies a category of disputes (disagreements between the parties over "the amount of loss"), provides for submission of those disputes to specified third parties (namely, two appraisers and the jointly-selected umpire), and makes the resolution by those third parties of the dispute binding (by stating that "[a]n award in writing of any two *will determine* the amount of the loss").

*Milligan*, 920 F.3d at 152 (emphasis in original). Likewise, the appraisal provision in this case identifies the dispute, submits the dispute to a third party, and makes the third party's resolution binding on the parties. Therefore, the appraisal process in this case constitutes arbitration under the FAA.

### C.  Martinique's Failure to State a Claim

Upon addressing the legal issues outlined above, the Court can consider Defendants' motion. Defendants offer two arguments in support of their motion to dismiss. First, Defendants assert that Martinique's lawsuit seeking vacatur of the appraisal award is untimely because, under the FAA, a motion to vacate an arbitral award must be made within three months "after the award is filed or delivered." Filing 12 at 13. Second, Defendants contend that Martinique's complaint

fails to state a claim for relief. Filing 12 at 16-20. The Court agrees with Defendants that Martinique has failed to state a claim for relief.[5]

The FAA contains a residual clause providing that Chapter 1 of the FAA applies to actions brought under the Convention if there is no conflict with the Convention or its implementing legislation. *See* 9 U.S.C. § 208. Both the FAA and the Convention provide grounds for vacatur of an arbitral award. Article V of the Convention states that recognition of an arbitral award may be refused "only if" the party seeking vacatur satisfies one of five conditions. *See* 21 U.S.T. 2517, T.I.A.S. No. 6997 at Art. V. Despite this apparently mandatory language, several courts have concluded that the grounds for vacatur provided in § 10 of the FAA also apply to arbitration awards governed by the Convention. *See, e.g.*, *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) ("The Convention specifically contemplates that the state in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief."); *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 292 (3d Cir. 2010), *as amended* (Dec. 7, 2010) (holding, in analyzing an arbitration agreement governed by the Convention, "[W]e may apply United States law, including the domestic FAA and its vacatur standards."). The Eighth Circuit has not weighed in on this issue. However, the Court need not decide the issue because under either the Convention or § 10 of the FAA, Martinique has failed to state a claim for vacatur.

---

[5] Because the Court determines that Martinique has failed to state a claim for relief, it does not need to address the issue of if Martinique's claim is time-barred. Based on the information it is allowed to consider on this motion to dismiss, the Court is unable to determine if Pontillo's June 8, 2020 letter constituted effective "delivery" of the appraisal award under the FAA. *See Prospect Funding Holdings (NY), LLC v. Ronald J. Palagi, P.C., L.L.C.*, No. 8:18-CV-15, 2018 WL 2926296, at *6 (D. Neb. June 8, 2018) (declining to rule on sufficiency of emails to give notice of an arbitral award when there was no information in the record on the rules governing the arbitration).

Looking first to the Convention, Article V lists five grounds under which an award may be vacated:

> (a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

21 U.S.T. 2517, T.I.A.S. No. 6997 at Art. V, Sec. 1. These defenses are strictly applied and narrowly viewed. *See Admart AG v. Stephen & Mary Birch Found.*, 457 F.3d 302, 308 (3d Cir. 2006) ("[C]ourts have strictly applied the Article V defenses and generally view them narrowly.").

Martinique has not sufficiently alleged grounds to vacate the award under the Convention. Martinique does not claim it was under any incapacity, that it did not have proper notice, or that the appraisal award "deals with a difference not contemplated by . . . the terms of the submission to arbitration." 21 U.S.T. 2517, T.I.A.S. No. 6997 at Art. V, Sec. 1(a)–(c). Nor does Martinique contend that that the arbitral authority or procedure did not accord with the agreement between it and Defendants, or that the award has not yet become binding. *See id.* at Art. V, Sec. 1(d)–(e).

Thus, nothing in Martinique's complaint supports vacatur of the appraisal award under the grounds provided by the Convention.

Turning to the grounds under § 10 of the FAA, the Court concludes that Martinique has failed to state a claim for vacatur of the appraisal award under the FAA as well. Section 10 of the FAA provides grounds for vacatur in the following circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4). Martinique argues that it has sufficiently alleged grounds under subsections (3) and (4). Specifically, Martinique claims that "in making the Appraisal Award, the umpire used figures and measurements which are contrary to the actual conditions of the Property which were not contradicted by the parties or the appraisers and the Appraisal Award is incomplete as it omits certain buildings at the Property from the Appraisal Award." Filing 1 at 16.

An arbitral award is owed "an extraordinary level of deference." *Keebler Co. v. Milk Drivers & Dairy Emps. Union, Local No. 471,* 80 F.3d 284, 287 (8th Cir. 1996). Federal courts may not reconsider the merits of an arbitral award "even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Bureau of Engraving, Inc. v. Graphic Commc'n Int'l Union, Local 1B*, 284 F.3d 821, 824 (8th Cir. 2002) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). "Indeed, an award must be

confirmed even if a court is convinced the arbitrator committed a serious error, so 'long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority.'" *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 798 (8th Cir. 2004) (quoting *Bureau of Engraving*, 284 F.3d at 824).

Martinique's allegations are insufficient to support vacatur of the appraisal award under the FAA. Using different figures and measurements to ascertain the scope of the loss to the Martinique Apartments is not evidence of misconduct, nor does it show that the umpire refused to hear evidence. Moreover, it does not provide a basis for concluding that the umpire exceeded his authority. Indeed, using independent figures and measurements to resolve a dispute seems proper given the umpire's role as an impartial adjudicator.

Neither does the alleged omission of buildings support Martinique's claim. Allegations of factual errors are insufficient grounds to vacate an arbitral award. *See Med. Shoppe Int'l, Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 488 (8th Cir. 2010) ("Courts have no authority to reconsider the merits of an arbitration award, even when the parties allege that the award rests on factual errors."); *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 751 (8th Cir. 1986) ("We may not set an award aside simply because we might have interpreted the agreement differently or because the arbitrators erred in interpreting the law or in determining the facts"). Martinique "do[es] not allege any corruption, fraud, partiality or an abuse of power—the grounds recognized by the FAA." *Id.* at 489. Therefore, Martinique's complaint fails to allege grounds under which the appraisal award may be vacated.

Because the appraisal award is valid, Martinique's claim for breach of contract also fails. In its complaint, Martinique states "[t]hat upon the Court's declaration invalidating the appraisal process . . . Defendants have a contractual obligation to pay the full amount of the Loss, including

the costs to repair, restore and/or replace the damage to the Property less any applicable deductible." Filing 1 at 18. Thus, Martinique's breach of contract claim relies upon the invalidation of the appraisal award. With the appraisal award intact, Martinique fails to state a claim for breach of contract.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss. Accordingly,

IT IS ORDERED:

1.  Defendants' Motion to Dismiss, Filing 9, is granted;

2.  Plaintiff's Complaint, Filing 1, is dismissed; and

3.  The Court will enter a separate judgment.

Dated this 15th day of October, 2021.

BY THE COURT:

Brian C. Buescher
United States District Judge